UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | | |
|---|---|---|
| TERESA B. MACIAS, | ) | |
| | ) | |
| Plaintiff, | ) | Case  No. EDCV 07-1105 AJW |
| | ) | |
| v. | ) | MEMORANDUM OF DECISION |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits.  The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

The parties are familiar with the procedural history of this case, which is summarized in the Joint Stipulation. [See JS 2].  In a written hearing decision that constitutes the final decision of the Commissioner, an administrative law judge ("ALJ") found that plaintiff had severe impairments consisting of knee problems, but that she was not disabled because she retained the residual functional capacity ("RFC") to perform light work, and her RFC did not preclude performance of her past relevant work.[See JS 2; Administrative Record ("AR") 16-17].

**Standard of Review**

1

2    The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial

3    evidence or is based on legal error. <u>Stout v. Commissioner, Social Sec. Admin.</u>, 454 F.3d 1050, 1054 (9th

4    Cir. 2006); <u>Thomas v. Barnhart</u>, 278 F.3d 947, 954 (9th Cir. 2002).  "Substantial evidence" means "more

5    than a mere scintilla, but less than a preponderance." <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1214 n.1 (9th Cir.

6    2005).  "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

7    <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted).  The court is

8    required to review the record as a whole and to consider evidence detracting from the decision as well as

9    evidence supporting the decision.  <u>Robbins v. Social Sec. Admin</u>, 466 F.3d 880, 882 (9th Cir. 2006);

10   <u>Verduzco v. Apfel</u>, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than

11   one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

12   <u>Thomas</u>, 278 F.3d at 954 (citing <u>Morgan v. Commissioner of Social Sec. Admin.</u>, 169 F.3d 595, 599 (9th

13   Cir.1999)).

**Discussion**

14

15   **Treating psychiatrist's report**

16   Plaintiff contends that the ALJ improperly failed to consider the opinion of her treating psychiatrist,

17   Dr. John Kohut. [JS 3-4].

18   In response for a request for records in connection with plaintiff's application for disability insurance

19   benefits, Dr. Kohut submitted an initial psychiatric examination report, progress notes, and a letter dated

20   November 25, 2005.  The letter stated:

21       This covers patient's treatment from November 2004 to the present time.  The patient

22       continues her psychiatric care on an ongoing basis.  She has been seen by Patricia A. Haire,

23       Ph.D., clinical Psychologist, and, more recently, by Steven Hogan, PMHNP. Her diagnoses

24       remains [sic] Major Depressive Disorder, recurrent, severe without psychosis; Panic

25       Disorder without agoraphobia; Alcohol Dependence in full remission.  She continues to

26       experience marked symptoms of anxiety and depression and has been on a combination of

27       Lexapro 20 mg qam, Effexor and Cymbalta have [sic] been discontinued because of lack of

28       benefit.

[AR 285].

A treating physician's opinion that is contradicted by substantial evidence in the record, such as the opinion of an examining physician based on independent clinical findings, is not entitled to controlling weight; however, that opinion is "still entitled to deference" and should be evaluated using the factors set forth in the Commissioner's regulations. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007)(quoting SSR 96-2p at 4); see Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).[1] If contradicted by that of another doctor, a treating or examining source opinion may be rejected for specific and legitimate reasons that are based on substantial evidence in the record. Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); Tonapetyan v. Halter, 242 F.3d 1144, 1148-1149 (9th Cir. 2001;)Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995).

The ALJ noted that plaintiff "has complained of depression and anxiety, but the evidence does not show the existence of a severe mental impairment of any 12 months duration . . . ." [AR 14 (citing Exhibits 2-F, 5-F, 10-F, 11-F, and 14-F)].  The cited exhibits consist of plaintiff's mental health treatment records from Dr. Kohut and Kohut Psychiatric Medical Group (collectively, "Kohut"), and Cornerstone Behavioral Health Group;  Dr. Kohut's November 2005 letter; a consultative psychiatric examination report; and the opinions of two non-examining physicians. [See AR 14, 160-165, 381-398, 399-405, 440-453].

Dr. Kohut's findings and opinion are directly relevant to the issue of the severity and duration of any mental impairment. See 42 U.S.C. § 423(d)(1)(A)-(d)(2)(A)(stating that a social security disability claimant must establish the existence of  "any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months," and that the impairment must be "of such severity that he is not only unable to do his

---

[1]Those factors include the length of the treatment relationship, the frequency of examination by the treating physician, and the nature and extent of the treatment relationship between the patient and the treating physician.  Additional factors relevant to evaluating any medical opinion include the degree to which the opinion is supported by other evidence in the record, the "quality of the explanation provided" by the physician, the consistency of the medical opinion with the record as a whole, the physician's speciality, and "[o]ther factors" such as the degree of understanding a physician has of the Administration's "disability programs and their evidentiary requirements" and the degree of his or her familiarity with other information in the case record. Orn,495 F.3d at 631; 20 C.F.R. §§ 404 .1527(d)(2)-(6),  416.927(d)(2)-(6).

1  previous work but cannot, considering his age, education, and work experience, engage in any other kind

2  of substantial gainful work which exists in the national economy"); see also Webb v. Barnhart, 433 F.3d

3  683, 686 (9th Cir. 2006)(stating that a medically determinable impairment or combination of impairments

4  may be found "not severe *only if* the evidence establishes a slight abnormality that has no more than a

5  minimal effect on an individual's ability to work").  The ALJ, however, did not discuss the evidence from

6  Kohut or give reasons for rejecting Dr. Kohut's November 2005 opinion. Although the exhibits from Kohut

7  do not include treatment notes from November 2004, the date Dr. Kohut said plaintiff's treatment began,

8  the treatment notes from Kohut and Cornerstone Behavioral Health Group cover the period from February

9  2005 to January 2007, a period of almost two years. [AR 160-165, 285-293, 400-405, 440-453].

10  The ALJ committed reversible error in failing to provide specific, legitimate reasons based on

11  substantial evidence for rejecting the opinion of Dr. Kohut.  The Commissioner cannot supply the rationale

12  that is missing from the ALJ decision because the court is "constrained to review the reasons the ALJ

13  asserts" for denying benefits. Stout, 454 F.3d at 1054.

14  **Rating plaintiff's mental impairment**

15  Plaintiff also contends that the ALJ erred in rating the severity of her mental impairment because

16  he did not employ the technique set forth in the Commissioner's regulations.

17  The regulations state that a "special technique," also referred to as the psychiatric review technique,

18  will be used to evaluate the severity of mental impairments. See 20 C.F.R. §§ 404.1520a, 416.920a; Social

19  Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *4. The regulations explain that

20  [u]sing the technique helps (1) Identify the need for additional evidence to determine

21  impairment severity;(2) Consider and evaluate functional consequences of the mental

22  disorder(s) relevant to your ability to work; and (3) Organize and present our findings in a

23  clear, concise, and consistent manner.

24  20 C.F.R. §§ 404.1520a(a)(1)-(3), 416.920a(a)(1)-(3).

25  The psychiatric review technique requires adjudicators to evaluate and document a claimant's

26  symptoms, signs, and laboratory findings to determine whether one or more medically determinable mental

27  impairments exists, and, if so, to rate the degree of functional limitation resulting from the impairment(s)

28  in "broad functional areas" using the rating scale prescribed in the regulations. 20 C.F.R. §§

4

404.1520a(c)(3), 416.920a(c)(3).  The regulations call for the psychiatric review technique rating to be used at the second and third steps of the sequential evaluation procedure to determine whether the claimant has a severe mental impairment and whether a severe mental impairment meets or equals a listed impairment. See 20 C.F.R. §§ 404.1520a(d)(1)-(2), 416.920(d)(1)-(2).  If the impairment is severe but not of listing-level severity, the claimant's residual functional capacity will be assessed. See 20 C.F.R. §§ 404.1520a(d)(3), 416.920a(d)(3).          In SSR 96-8p, the Commissioner clarified that the psychiatric review technique

> requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments.

SSR 96-8p, 1996 WL 374184, at *4.

          The regulations require the ALJ to rate the severity of a claimant's mental impairment at steps two and three using the psychiatric review technique.  This the ALJ did not do.  It is not clear from the ALJ's decision whether he found that plaintiff's mental impairment was not severe, or whether he found only that plaintiff's mental impairment did not meet the duration requirement. See 20 C.F.R. § 404.1520(a)(4)(ii)("If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . ., we will find that you are not disabled.").  If the ALJ rated the severity of plaintiff's mental impairment but did not use the psychiatric review technique, that was error. If the ALJ did not rate the severity of plaintiff's mental impairment because he found that she did not meet the duration requirement, that too was error in light of his erroneous rejection of the treating source evidence concerning the duration and extent of her mental impairment.[2]

---

[2]     If, on remand, the ALJ permissibly concludes that plaintiff's mental condition does not meet the duration requirement, that would obviate the necessity for a severity rating. See 20 C.F.R. §

**Treating physician's opinion**

Plaintiff contends that the ALJ's reasons for rejecting the opinion of Paul Burton, plaintiff's orthopedic surgeon, were not legitimate and were not supported by substantial evidence. [JS 11-12].

In a letter dated February 26, 2006 addressed to plaintiff's attorney, Dr. Burton wrote that plaintiff had

> asked me to write a letter on her behalf regarding her time off for her knee.  It is noted that she has arthritis in the knee and had meniscus surgery on November 20, 2005, arthroscopy of the right knee with arthroscopic medial meniscoplasty and partial synovectomy, chondroplasty of the patella and medial femoral condyle.  On June 22, 2005, she had a similar operation on the left knee.  She is still recuperating from that and attending therapy.  She has been off work since April 2005 and will likely be off for one continuous year until April 2006.

[AR 407].

The ALJ observed that Dr. Burton wrote his February 2006 letter at plaintiff's request.  The ALJ characterized that letter as "a lukewarm and tentative expression of disability." He noted that Dr. Burton opined that plaintiff likely would be off work for a year "but did not even attempt to assess a residual functional capacity." [AR 15].  The ALJ concluded that Dr. Burton's opinion was "unsupported by his own records, which show good surgical results and short periods of convalescence." [AR. 15].  The ALJ rejected Dr. Burton's opinion as a "bald, unsupported, conclusory statement entitled to little weight . . . ." [AR 15].

Plaintiff argues that the ALJ improperly inferred that Dr. Burton's opinion was less credible because his letter was written at plaintiff's request.  In general, the purpose for which a medical report or opinion was obtained does not provide a legitimate basis for rejecting that evidence in the absence of other evidence that undermines its credibility.  See Reddick v. Chater, 157 F.3d 715, 726 (9th Cir. 1998); Lester v. Chater, 81 F.3d 821, 832 (9th Cir. 1995).  The ALJ, however, provided other legitimate reasons for giving minimal weight to Dr. Burton's letter. First, his opinion was expressed in somewhat ambiguous or tentative terms.  Dr. Burton noted that plaintiff was "recuperating" and "attending therapy" following her June 2005 and

404.1520(a)(4)(ii).

6

November 2005 bilateral knee surgeries, but  those activities are not necessarily incompatible with the ability to perform all work.  Dr. Burton noted that plaintiff was "likely to be off work" until April 2006, but he did not identify the medical conditions, signs, or symptoms that made her disability "likely," nor did he cite any supporting evidence. The ALJ also noted that Dr. Burton's contemporaneous treatment notes were inconsistent with his disability opinion because they reflected good surgical results and healing. In February 2006, for example, notwithstanding plaintiff's subjective complaints of "severe pain" bilaterally, she exhibited good pulses, mild varus (bowing), full range of motion in the left knee, slightly reduced range of motion in the right knee, mild swelling, and somewhat diminished motor strength in the quadriceps and hamstrings. [AR 424].  During her next visit in April 2006, plaintiff complained of moderate bilateral knee pain with weakness and stiffness and a "sharp pain" in her hip with sharp turns. She exhibited full range of motion in both knees, well-healed incisions, mild varus, slight limp to the right, mild swelling and tenderness to palpation over the medial joint line in the right knee, no swelling or tenderness in the left knee, and a negative McMurray's test.[3] Plaintiff had reduced pedal pulses but adequate hip and ankle motion, and normal quadriceps and hamstring motor strength. [AR 416].  Those findings may have been indicative of some functional restrictions involving plaintiff's knees, but they are not consistent with a total inability to work.

The ALJ was justified in rejecting Dr. Burton's opinion because it was tentative, conclusory, and inadequately supported by his treatment notes. See Bayliss, 427 F.3d at 1217 (noting that "an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings," and holding that the ALJ properly rejected a treating physician's opinion that was contradicted by the doctor's treatment notes).  Therefore, the ALJ did not err in assessing Dr. Burton's opinion.

**Examining orthopedist**

Plaintiff argues that the ALJ misstated the findings made by the Commissioner's consultative orthopedist, Dr. Conaty, and erroneously rejected Dr. Conaty's finding that plaintiff was limited to standing or walking four hours in an eight hour workday. [JS 14-15].

---

[3]     A positive McMurray's test is significant for injury to the posterior or middle segment of the medial or lateral meniscus in the knee.  See Dan J. Tennenhouse, M.D., J.D., F.C.L.M., Attorneys' Medical Deskbook § 18:4 (4th ed.).

Dr. Conaty examined plaintiff in September 2005, before her right knee surgery. Among other things, he opined that she could lift and carry 50 pounds occasionally and 25 pounds frequently, and that she could stand and walk for four hours in an eight-hour workday. [AR 169]. The ALJ said that Dr. Conaty concluded that plaintiff could perform "a fairly wide range of medium level work." [AR 16]. That accurately described Dr. Conaty's opinion about the weight plaintiff could lift and carry, but not the amount of time plaintiff could spend standing and walking. The ALJ's mistake was not error, however, because the ALJ did not find that plaintiff could perform medium work, nor did he adopt Dr. Conaty's restriction to four hours of standing or walking. Giving "particular weight" to the opinion of Dr. Hartman, a state agency non-examining physician who opined that plaintiff could perform light work in October 2005 following her left knee arthroscopy, the ALJ found that plaintiff could perform a range of light work. The ALJ noted that plaintiff underwent arthroscopy on her right knee after both Dr. Conaty and Dr. Hartman issued their opinions, and that her post-surgical treatment records showed good progress and increased function within weeks after her second surgery. Those records constitute substantial evidence buttressing the non-examining physician's opinion that plaintiff can perform light work. See Tonapetyan, 242 F.3d at 1148 (explaining that the opinion of a non-examining physician may constitute substantial evidence when it is consistent with other independent evidence in the record).     The ALJ did not err in rejecting Dr. Conaty's standing and walking restrictions.

**Past relevant work**

Plaintiff contends that the ALJ did not adequately evaluate the physical and mental demands of her past relevant work as a bank proof operator and mortgage payment processor. [JS 18-19].

A social security disability claimant bears the burden of proving that she cannot perform either the "actual functional demands and job duties of a particular past relevant job" or the "functional demands and job duties of the occupation as generally required by employers throughout the national economy." Pinto v. Massanari, 249 F.3d 840, 845 (9th Cir. 2001) (quoting SSR 82-62); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005); Villa v. Heckler, 797 F.2d 794, 798 (9th Cir. 1986). The ALJ's obligation is "to make the requisite factual findings to support" the conclusion that the claimant can perform past relevant work. "This is done by looking at the residual functional capacity and the physical and mental demands of the claimant's past work." Pinto, 249 F.3d at 844-845 (quoting 20 C.F.R. §§ 404.1520(e) and 416.920(e)).

1  A properly completed vocational report may be used to define a claimant's past work as actually performed.

2  Pinto, 249 F.3d at 845 (citing SSR 82-61, 1982 WL 31387, at *2); SSR 82-41, 1982 WL 31389, at *4 ("The

3  claimant is in the best position to describe just what he or she in [past relevant work], how it was done, what

4  exertion was involved, what skilled or semiskilled work activities were involved, etc.").

5      Here, the ALJ properly relied upon plaintiff's work history report to ascertain the demands of her

6  past jobs as she actually performed them. [See AR 122-129].  Because, however, the ALJ erred in assessing

7  the medical evidence regarding the duration and severity of plaintiff's mental impairment, his decision that

8  plaintiff's RFC does not preclude performance of her past relevant work cannot stand.

9      **Remedy**

10      The choice whether to reverse and remand for further administrative proceedings, or to reverse and

11  simply award benefits, is within the discretion of the court.  See Harman v. Apfel, 211 F.3d 1172, 1178 (9th

12  Cir.) (holding that the district court's decision whether to remand for further proceedings or payment of

13  benefits is discretionary and is subject to review for abuse of discretion), cert. denied, 531 U.S.  1038

14  (2000).  The Ninth Circuit has observed that "the proper course, except in rare circumstances, is to remand

15  to the agency for additional investigation or explanation."  Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir.

16  2004) (quoting INS v. Ventura, 537 U.S. 12, 16 (2002) (per curiam)).   A district court, however,

17          should credit evidence that was rejected during the administrative process and remand for

18          an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for

19          rejecting the evidence; (2) there are no outstanding issues that must be resolved before a

20          determination of disability can be made; and (3) it is clear from the record that the ALJ

21          would be required to find the claimant disabled were such evidence credited.

22  Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (citing Harman, 211 F.3d at 1178). The Harman test

23  "does not obscure the more general rule that the decision whether to remand for further proceedings turns

24  upon the likely utility of such proceedings."  Harman, 211 F.3d at 1179; see Benecke, 379 F.3d at 593

25  (noting that a remand for further administrative proceedings is appropriate "if enhancement of the record

26  would be useful").

27      The appropriate remedy in this case is a remand for further administrative proceedings because it

28  is not clear from the record that the ALJ be required to award benefits if he properly weighed the

1   medical opinion evidence. On remand, the ALJ shall conduct a supplemental hearing and issue a new

2   decision.

3                                    **Conclusion**

4          For the reasons stated above, the Commissioner's decision is not supported by substantial evidence

5   and does not reflect application of the proper legal standards.  Accordingly, the Commissioner's decision

6   is reversed, and the case is remanded for further administrative proceedings consistent with this

7   memorandum of decision.

8   **IT IS SO ORDERED.**

9

10  DATED: August 1, 2008

11                                    _____

12                                    ANDREW J. WISTRICH
                                      United States Magistrate Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28